THOMAS, Judge,
dissenting.
I must respectfully dissent. I disagree that the juvenile court, despite stating in its order that it was “unable to find that [T.J. was] the presumed father,” actually failed to conclude that T.J. was the presumed father under Ala.Code 1975 § 26-17-204(a)(5), a part of the Alabama Uniform Parentage Act (“the Act”), Ala.Code 1975 § 26-17-101 et seq. In order to make clear the basis upon which I believe the writ should be granted, I will quote a large portion of the order from which T.J. seeks relief.
“It is clear from the testimony of the witnesses and the admissions by the mother that [T.J.] has been in a generous and loving role towards the minor child, and that he has provided for her emotionally and financially since her *452 birth. Furthermore, it is clear from the testimony that the mother has allowed the relationship to grow and that the child calls [T.J.] ‘daddy.’ The evidence clearly shows that [T.J.], despite knowing that the child is not or may not be his genetic child, affirmatively accepted a caregiver role as the child’s father and that the child, the mother, and the maternal grandmother have relied on that acceptance.
“At the hearing, [T.J.] sought to have this Court’s declaration of [T.J.’s] parentage and that he is the presumed father of [the child] pursuant to § 26-17-204(a)(5) Code of Alabama (1975), which states in pertinent part that ... ‘A man is presumed to be the father of a child if: while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child....’
“It is undisputed that [T.J.] has established a parent-child relationship with [the child]. Notwithstanding the same, it is unlikely that he believed this child to be his ‘natural’ child when he was incarcerated at the likely time of conception. [T.J.] does not dispute that he was incarcerated from July through November in 2004 and further that he did not have a physical relationship with the mother at the likely time of conception. This court cannot ignore this fact. Further, the mother testified that she was already 5 months pregnant when [T.J.] was released from incarceration in November 2004. This court also considered the HeadStart application, which pre-dates this proceeding, wherein the mother identified another man as the father of [the child] and identified [T.J.] as the Godfather.
“Based on the foregoing, this court is unable to find that [T.J.] is the presumed father. Accordingly, the Parties may proceed with genetic testing.”
As a reading of the juvenile court’s factual findings makes clear, the juvenile court did determine that T.J. had, in fact, established facts amounting to a presumption of his paternity under § 26-17-204(a)(5). That section reads:
“(a) A man is presumed to be the father of a child if:
“(5) while the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child or otherwise openly holds out the child as his natural child and establishes a significant parental relationship with the child by providing emotional and financial support for the child.”
The juvenile court found, as a matter of fact, that T.J., who knew or at least suspected that the child was not his biological offspring, (1) “has been in a generous and loving role towards the minor child,” (2) “has provided for her emotionally and financially since her birth,” and (3) has “affirmatively accepted a caregiver role as the child’s father.” In addition, the juvenile court found that “the mother has allowed the relationship to grow and that the child calls [T.J.] ‘daddy’ ” and that T.J., the mother, and the maternal grandmother had relied on T.J.’s assumption of the role of father in the child’s life. These findings clearly and without question establish that T.J. has “otherwise openly [held] out the child as his natural child and [has] established] a significant parental relationship with the child by providing emotional and financial support for the child.” § 26-17- *453 204(a)(5).[2] Moreover, the juvenile court stated that “[i]t is undisputed that [T.J.] has established a parent-child relationship with [the child].”
The juvenile court then goes further, however, to determine that T.J. could not be the biological father of the child because he was incarcerated at the time of the child’s conception. In support of the decision to reject T.J.’s presumed fatherhood based almost solely on this fact, the juvenile court, in its response to T.J.’s mandamus petition, first states that it determined that “clear and convincing evidence was presented which rebutted any presumption of paternity in [T.J.].” Secondly, the juvenile court states that it “found that it would be intellectually dishonest to presume [T.J.] to be the father of the child, considering the evidence presented,” and explicitly declares its reliance on the Official Comment to Section 607 of the Uniform Parentage Act, which states that “[i]t is inappropriate for the law to assume a presumption known by all those concerned to be untrue.” § 26-17-607, Uniform Comment.
Section 607 of the Uniform Act reads:
“(a) Except as otherwise provided in subsection (b), a proceeding brought by a presumed father, the mother, or another individual to adjudicate the parentage of a child having a presumed father must be commenced not later than two years after the birth of the child.
“(b) A proceeding seeking to disprove the father-child relationship between a child and the child’s presumed father may be maintained at any time if the court determines that:
“(1) the presumed father and the mother of the child neither cohabited nor engaged in sexual intercourse with each other during the probable time of conception; and
“(2) the presumed father never openly held out the child as his own.”
Even assuming that, under the Uniform Parentage Act, the juvenile court’s decision to permit the mother to rebut T.J.’s presumption was proper, it is of no consequence to the decision in the present case.[3]
Alabama has not adopted Section 607 of the Uniform Parentage Act. The Alabama Comment to § 26-17-607 make this more than abundantly clear: “This section is substantially different from Section 607 of the Uniform Parentage Act (2002).” The comment goes further to explain that Alabama “follows Ex parte Presse, 554 *454 So.2d 406 (Ala.l989)[,] and its progeny that favor maintaining the integrity of the family unit and the father-child relationship that was developed therein. Once the presumed father ceases to persist in his parentage, then an action can be brought.” Section 26-17-607(a) reads:
“(a) Except as otherwise provided in subsection (b), a presumed father may bring an action to disprove paternity at any time. If the presumed father persists in his status as the legal father of a child, neither the mother nor any other individual may maintain an action to disprove paternity.”
(Emphasis added.)
I note that the juvenile court, in its order, focuses on the fact that “it is unlikely that [the father] believed this child to be his ‘natural’ child when he was incarcerated at the likely time of conception.” If the juvenile court believed that T.J.’s knowledge of his lack of biological parentage somehow prevented him from establishing the presumption under § 26-17-204(a)(5), I must disagree. I do not believe that subsection (a)(5) requires that, in order to establish the presumption under that subsection, a man must believe that the child is his “natural” child, i.e., that the child is his biological offspring.
I understand that the use of the word “as” in the phrase “openly holds out the child as his natural child” is perhaps not entirely clear in meaning. However, I read “as” in this context as meaning “in the way or manner that,” “in accordance with what or the way in which,” or “in the capacity, character, condition, or role of.” Merriam-Webster’s Collegiate Dictionary 71 (11th ed.2003). Likewise, to “hold out” is defined as “to represent to be,” id. at 592, while “represent” is defined as “to describe as having a specified character or quality.” Id. at 1057. Thus, subsection (a)(5) establishes a presumption of paternity in a man who openly treats a child in the same manner he would treat his biological child, who openly treats a child in accordance with the way that a father would treat his biological child, or who openly treats the child as if the child had assumed the role of his biological child “and establishes a significant parental relationship with the child by providing emotional and financial support for the child.” § 26-17-204(a)(5). Read in this way, § 26-17-204(a)(5) serves to promote a significant parental relationship over a mere biological connection. Such a reading finds generous support in comments to the Act.
The Uniform Comment to § 26-17-204 states that “courts may use the estoppel principles in § 608 in appropriate circumstances to deny requests for genetic testing in the interests of preserving a child’s ties to the presumed or acknowledged father who openly held himself out as the child’s father regardless of whether he is in fact the genetic father.” Thus, it is clear that a presumption under § 26-17-204(a)(5) arising from a man’s decision to hold the child out as his own offspring is not automatically trumped by proof that he could not possibly be the “genetic father.” An examination of the Uniform Comment to Ala.Code 1975, § 26-17-608, further bolsters the conclusion that the presumption under § 26-17-204(a)(5) does not require the man seeking to establish the presumption to actually believe that he is, indeed, the biological or genetic father of the child. That comment reads:
“This section incorporates the doctrine of paternity by estoppel, which extends equally to a child with a presumed father or an acknowledged father. In appropriate circumstances, the court may deny genetic testing and find the presumed or acknowledged father to be the father of the child. The most common situation in which estoppel should be applied arises when a man knows that a child is not, or may not be, his *455 genetic child, but the man has affirmatively accepted his role as [the] child’s father and both the mother and the child have relied on that acceptance. Similarly, the man may have relied on the mother’s acceptance of him as the child’s father and the mother is then estopped to deny the man’s presumed parentage.”
(Emphasis added.) Because my reading of § 26-17-204(a)(5) comports with what I believe to be a primary purpose of the Act — maintaining significant parent-child relationships despite the lack of a genetic link — I cannot agree with the juvenile court’s apparent belief that T.J.’s knowledge of his likely lack of a biological connection with the child somehow prevents him from establishing the presumption to which he is entitled.
Because the juvenile court found that the evidence at the hearing established that T.J. had developed and maintained a father-child relationship with the child and that he had emotionally and financially supported the child since her birth as if she were his biological child despite his knowledge that she likely was not, I conclude that the juvenile court determined that T.J. met the requirements of § 26-17-204(a)(5) and, thus, was a presumed father under the Act. At that point, the juvenile court was prohibited by § 26-17-607(a) from allowing the mother to rebut T.J.’s presumption of paternity. Instead, the juvenile court was required to dismiss the mother’s action to establish the child’s paternity insofar as it sought to establish paternity in J.H. and insofar as it sought genetic testing to do so. I would, therefore, grant the petition and issue the writ of mandamus requested by T.J.
BRYAN, J., concurs.

. The main opinion relies on the juvenile court's statement that it was "unable to find that [T.J. was] the presumed father” under the Act. However, the juvenile court’s determination that TJ. was not the presumed father was not a factual finding; instead, the juvenile court made a legal conclusion that T.J. was not entitled to the presumption of paternity in § 26-17-204(a)(5). I believe that the juvenile court's numerous factual findings, which were made after the juvenile court considered the testimony and resolved conflicts in the evidence and which are set out supra, form the basis for only one possible legal conclusion — that TJ. is the child's presumed father; thus, I am not reweighing evidence or usurping the role of the juvenile court. I am firmly convinced, in large part because of the language used in the juvenile court’s order and by the juvenile court in its response to the mandamus petition, that the juvenile court has committed error in its application of the law.

. I question whether under the Uniform Parentage Act the mother would have been permitted to disprove T.J.'s presumed fatherhood because that act clearly requires not only evidence of the unlikelihood that the presumed father was involved in the conception of the child but also proof that "the presumed father never openly held the child out as his own,” which would not comport with the factual findings made by the juvenile court in this case.